```
                IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF ALABAMA
                          MIDDLE DIVISION

MARY PRUITT,                  }
                              }
     Plaintiff,               }
                              }   CIVIL ACTION NO.
v.                            }
                              }   98-AR-2153-M
CITY OF MOODY,                }
                              }
     Defendant.               }
                              }
```

FILED
99 DEC -3 PM 3:50
U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED
DEC -3 1999

## MEMORANDUM OPINION

Presently before the court is a motion for summary judgment filed by defendant, the City of Moody ("City"). The motion seeks judgment as a matter of law on claimed violations of 42 U.S.C. §§ 2000e *et seq.*, Title VII of the Civil Rights Act of 1964, *as amended* ("Title VII"). Plaintiff Mary Pruitt ("Pruitt") claims that the City discriminated against her based on her sex, female, when it selected a male candidate for an advertised position. For the reasons set forth below, the City's motion is due to be granted.

## BACKGROUND

In February of 1995, Pruitt was hired by the City as a Traffic Control Officer. She started as a part-time employee, working four



hours a day. She gradually added additional hours by performing tasks not originally included in her job description, such as Animal Control , and Laborer, level I, ("Laborer I") with the City's Department of Public Works.

As an employee in the category of Laborer I, Pruitt's duties included cleaning City Hall, dumping garbage, cleaning the City Park and Civic Centers, and performing other general tasks. During her thirty-one months as a City employee, Pruitt also assisted and participated in other tasks, including those ordinarily performed by employees in the Laborer III category.[1] The job description for Laborer III states that the Laborer III:

> Assists in maintaining all City owned buildings and properties, performs landscaping functions, empties trash receptacles, performs vehicle maintenance and repairs on all equipment related to the department including repairing and maintaining heavy equipment. Must operate heavy and light equipment, assist in repairing and maintaining roadways, does light welding and other types of general labor as may be required.

In addition to the description above, the Laborer III position required a Commercial Driver's Licence.

The degree and character of Pruitt's involvement and experience with Laborer III tasks is a matter in dispute.  Pruitt

---

[1] The City has never had an employee in the Laborer II category.

2

claims that she gained enough experience performing Laborer III tasks during her time as a Laborer I that she became fully qualified for a Laborer III position. She claims that she "assist[ed] in vehicle maintenance and repair and operat[ed] equipment." Pruitt claims that she was instructed on how to drive the dump truck, tractor, backhoe, and a piece of lawn-mowing equipment referred to as a "bush hog." In fact, Pruitt claims that "by July 1996, [she] had operated all pieces of equipment owned by the Defendant."

In contrast to Pruitt's assertions, the City describes Pruitt's Laborer III-oriented activities as follows:

> Sometime after May of 1996, Pruitt drove, but did not operate, a dump truck.[2] On one occasion, she read instructions while coworkers Marlyn Price, Steve Mitchell, and Jack Forman fixed a pickup truck. On another occasion, Pruitt read the instruction manual while Price put in a timing belt. Pruitt assisted in repairing a fuel pump by holding the pump in place while someone else replace the pins, and picking up dropped tools. Pruitt helped change tires and change and sharpen bush hog blades.

---

[2] The City asserts repeatedly that there is a significant distinction between the activities of "driving" the heavy equipment as opposed to "operating" the equipment. The City insists that when Pruitt describes her experience to include "operating" the tractor or the bush hog or dump truck, she, in fact, actually means that she "drove" the equipment. The City argues that Pruitt has never been trained to operate the attached mechanisms.

On April 25, 1997, the City placed a three-day ad for a Laborer III position. Pruitt was informed that she was one of the three finalists for the position. An applicant named Jimmy Moody was selected for the position over Pruitt. Although the evidence in the record does not indicate that this factor was dispositive, it has been conceded that Pruitt did not have a Commercial Driver's Licence at that time.

Another Laborer III position became available on September 29, 1997, after Jimmy Moody left the job in August. Pruitt applied, but on the same day of her application she turned in her resignation. When she turned in her resignation, Pruitt was told that if she failed to work out her two weeks' notice, she would not be eligible for rehire. Pruitt did not work out her notice, which, according to the City, contributed to the City's failure to consider her for the opening. Pruitt concedes that the summary judgment is due to be granted in favor of the City with respect to any claim she brought relating to the Laborer III position of September 29, 1997.

### Discussion

Actionable discrimination under Title VII can be shown through either direct or circumstantial evidence. Here, Pruitt claims that she can show both. First, Pruitt claims that several statements

4

made by her supervisor and by a co-worker constitute direct evidence of discrimination. These include:

    1) On approximately August 12, 1997, Pruitt's supervisor, Mr. Jenkins, allegedly called her into his office and told her that she would be performing tasks related only to cleaning from that point forward, because "cleaning was woman's work."

    2) In the summer of 1997, Marlyn Price, one of Pruitt's co-workers, allegedly told Pruitt that she was not going to get a Laborer III position. Price allegedly explained that he had been present when the employment decision-makers for the City of Moody stated that they were "not going to hire a woman for the job."

    3) In September of 1997, the second time Pruitt applied for a Laborer III position, she alleges that her supervisor, Mr. Jenkins, laughed and asked, "You just don't know when to give up, do you?"

Accepting the truth of Pruitt's versions of those remarks for the purpose of summary judgment consideration, the court nonetheless finds that they do not constitute "direct evidence" of actionable sex discrimination. A recent case from the Southern District of Florida summarizes the law of direct evidence of discrimination in the Eleventh Circuit:

> As explained by Justice O'Connor, "stray remarks in the workplace ... cannot justify requiring the employer to prove that its hiring or promotion decisions were based on legitimate criteria. Nor can statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself, suffice to satisfy the plaintiff's burden in this regard." *Price Waterhouse v. Hopkins*, 490 U.S. 228, 277, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989) (O'Connor, J., concurring). The Eleventh Circuit has adopted this definition of direct evidence and explained, "For statements of discriminatory intent to constitute direct evidence of discrimination,

5

they must be made by a person involved in the challenged decision." *Trotter v. Board of Trustees of Univ. of Ala.*, 91 F.3d 1449, 1453-54 (11th Cir.1996).

*Wheatley v. Baptist Hosp. of Miami, Inc.*, 16 F.Supp.2d 1356, 1360 (S.D. Fla. 1998).

With respect to statement number one, "cleaning was woman's work," the court finds that this statement is a "stray remark," "unrelated to the decisional process," and therefore cannot constitute direct evidence under *Trotter*, 91 F.3d at 1453-54. The court has no doubt that such a comment, if it in fact occurred, would have been highly offensive and completely inappropriate. The court shares Pruitt's reaction to any such incident but rejects the ultimate conclusion she draws from it.

With respect to Pruitt's allegation that Marlyn Price heard something spoken by City decision-makers, such a statement is hearsay. Although it is true that inadmissible hearsay can sometimes be considered by a court when ruling on a summary judgment motion, such hearsay can only be considered if it is capable of being reduced to admissible form at trial. *Pritchard v. Southern Co. Services*, 92 F.3d 1130, 1135 (11th Cir. 1996). Here, both Marlyn Price and the City decision-makers deny in deposition testimony that such a conversation ever took place. Thus, no admissible evidence in support of Pruitt's allegations will be

6

forthcoming. Consequently, this court cannot consider these statements in ruling on the present motion for summary judgment, and they do not constitute admissible direct evidence of discrimination.

Finally, statement number three, in which Pruitt's supervisor allegedly stated that she "did not know when to give up," also does not help Pruitt. This statement was made, if at all, in reference to the Laborer III position open in September of 1997. Pruitt has already acknowledged that summary judgment for the City is due to be granted as to any charges she brought relating to this job opening, because she quit her job with the City on the same day she applied for that position. Furthermore, even if Pruitt claims that this statement is evidence of an attitude that existed previously, this court finds that the statement is one of those "stray remarks," "unrelated to the decisional process," and therefore cannot constitute direct evidence of discrimination. *Trotter*, 91 F.3d at 1453-54. Moreover, there is nothing inherently discriminatory or gender oriented about the statement. Such a statement could just as easily be interpreted as a reference by Jenkins to his perception of Pruitt's lack of qualification for the job.

7

The recent opinion by Judge Tjoflat in *Wright v. Southland Corp.*, 187 F.3d 1287 (11th Cir. 1999), which was not joined by his fellow judges except in its reversal of the grant of summary judgment, attempts to clarify what Judge Tjoflat calls "the indiscriminate use of the term, 'direct evidence,'" which he says has resulted in "substantial confusion in the district courts in our circuit." *Wright*, 187 F.3d at 1293. Assuming, *arguendo*, that Judge Tjoflat's solution to a perceived problem represents the thinking of the Eleventh Circuit, so that "'direct evidence' in the context of employment discrimination law, means evidence from which a reasonable trier of fact could find, more probably than not, a causal link between an adverse employment action and a protected personal characteristic," *Wright*, 187 F.3d at 1293, this court finds that no reasonable trier of fact in the instant case could take these three remarks, either separately or severally, and fairly and logically reach the conclusion that the City's failure to hire Pruitt was based on her being female. This court hastens to add that if it weren't already one, it is now one of those confused district courts that Judge Tjoflat speaks of.

Next, Pruitt argues that she has demonstrated gender discrimination with "circumstantial evidence." When the evidence

8

presented is circumstantial, the *McDonnell Douglas* burden shifting test provides the appropriate framework. *Schoenfeld v. Babbitt*, 168 F.3d 1257, 1267 (11th Cir. 1999); citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817 (1973). Under this framework, the plaintiff has the initial burden of establishing a *prima facie* case of discrimination. *Eskra v. Provident Life and Acc. Ins. Co.*, 125 F.3d 1406, 1411 (11th Cir.1997). If he or she meets that burden, then an inference arises that the challenged action was motivated by a discriminatory intent. *Jones v. Gerwens*, 874 F.2d 1534, 1538 (11th Cir.1989). The burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for its action. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254-55, 101 S.Ct. 1089, 1094-95 (1981). If the employer successfully articulates such a reason, then the burden shifts back to the plaintiff to show that the proffered reason is really pretext for unlawful discrimination. *Id.* at 255-56, 101 S.Ct. at 1095-96.

In a failure-to-hire case, plaintiff can establish a *prima facie* case by showing: (1) membership in a protected class; (2) qualification for the position; (3) failure to hire, and (4) the position remained open or was filled by a person outside the

protected class. *Welborn v. Reynolds Metals Co.*, 810 F.2d 1026, 1028 (11th Cir.1987).

The parties agree that Pruitt can show elements (1),(3)and(4). Element (2), on the other hand, is much in dispute, and whether or not Pruitt was qualified for the advertised position is the central question of this case. Pruitt's core argument is that, although she was hired as a Laborer I and did not bring Laborer III-level skills to the job, she acquired those skills while working for two years for the City.

At summary judgment stage, this court must view the facts in the light most favorable to Pruitt. Even from this perspective, however, this court cannot find anything in the record, aside from Pruitt's own conclusory allegations, to support her assertion that she was actually qualified for a Laborer III position. Unfortunately, in her brief in opposition to summary judgment, Pruitt does not focus directly on the issue at hand. She argues, for example, that her supervisor, Mr. Jenkins, failed to give her an interview for the Laborer III position even though, from outward appearances on the applications, she had the qualifications for the job. This point is not significant, however, unless she <u>actually</u> was qualified for the job. Jenkins, as her supervisor of two years, testified in his deposition that she was not qualified, and

10

Pruitt offers no substantive outside evidence to show that she was. Next, in her brief, Pruitt focuses on Jenkins' alleged failure to come through with the full raise he promised; Jenkins' alleged unwillingness to give her overtime hours; and Jenkins' alleged unwillingness to pay for Pruitt's Commercial Driver's Licence training. Pruitt also alleges that she was excluded from the break room and never allowed to be "one of the guys." Pruitt's point here is apparently that all of this is evidence of her employer's bias and discrimination against females. The problem for Pruitt, however, is that none of this is relevant unless she was actually qualified for the advertised position. The decision-makers of the City may or may not be hard-core sexists and male chauvinists. Unless such attitudes blocked Pruitt from a position for which she was qualified, they are irrelevant. Pruitt offers no real evidence, to show that she was actually qualified for the job.

Pruitt did not include a copy of her own deposition along with her brief in opposition to summary judgment, so it is not possible for this court to know the degree to which she might have been helped by it. However, substantial parts of her deposition were included here by the City, and from what this court can find, Pruitt herself does not claim any substantial training in the areas described in the City's Laborer III job description. She testified

11

that she drove some equipment, used such items as a floor jack hydraulic lift to change tires, changed and sharpened lawn mower and bush hog blades, and served as an assistant to someone involved in vehicle repair on a couple of occasions. There is no evidence that Pruitt gained actual training in vehicle maintenance and repair, welding, or the actual operation of the mechanical devices attached to the tractors, dump trucks and backhoes she alleges to have occasionally driven.

Pruitt recently supplemented the record, after all briefs and responses were filed, with a self-serving affidavit. In this affidavit she again restates all the ways that she feels that her supervisors demonstrated bias against females, but again, offers virtually no evidence that she was qualified for the job. She states:

> I also performed many Laborer III duties, including assisting in vehicle maintenance and repair and operating equipment. In May 1996, Mr. Jenkins told Marlyn Price, one of my co-workers, that I needed to know how to operate the bush hog in case one of the men were out for some reason. That way, the work would not get behind. In June 1996, I was instructed on how to drive the dump truck and backhoe. By July 1996, I had operated all pieces of equipment owned by the City of Moody.

At the time Pruitt submitted this affidavit, she was already fully aware that the City was arguing that there was a great difference between "driving" and "operating" this heavy equipment.

12

At this late stage, being fully aware of the nature of this dispute, it is not enough for Pruitt to repeat again that she "operated" the equipment, knowing that the City aggressively disputes that claim. It is also not enough, in the context of this fully developed record of briefs and replies, for Pruitt to simply state that she "assisted" in vehicle repair. If she is attempting to claim that this "assistance" was more than simply reading a manual or picking up tools, she needed to say so, and she did not.[3]

Because Pruitt has failed to demonstrate that she was qualified for the position of Laborer III, she has not established her *prima facie* case of hiring discrimination under the McDonnell Douglas test. Assuming, *arguendo*, that she had made out a *prima facie* case, the burden would then shift to the City to articulate a legitimate, nondiscriminatory reason for the adverse employment decision. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824.

---

[3] The City has filed a motion to strike all or part of this affidavit, along with a motion to strike parts of Pruitt's brief. This court has determined that it is not necessary to consider these motions, because even allowing all of Pruitt's evidentiary submissions to be included in full, they provide her with little help. Accordingly, this court determines that the motion to strike the affidavit (docket sheet item 28), and the motion to strike portions of Pruitt's brief (docket sheet item 27), are moot.

Defendant's burden here is

> exceedingly light . . . the defendant need not persuade the court that it was actually motivated by the proffered reasons . . . it is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff. At this stage of the inquiry, the defendant need not persuade the court that its proffered reasons are legitimate; the defendant's burden is merely one of production, not proof.

*Perryman v. Johnson Products Co., Inc.*, 698 F.2d 1138, 1142 (11th Cir. 1983) (internal citations and quotations omitted).

The City offers the following as its nondiscriminatory reason for selecting a different candidate:

> The job description for Laborer III lists a number of duties required by the position. The three men selected for the Laborer III positions that became available while Pruitt worked for the City all had job experience in areas required for the Laborer III position. An objective comparison of those applications with that of Pruitt shows that Pruitt was not the most qualified applicant for the job. Pruitt's testimony shows that she may have driven equipment, but did not operate it. In contrast, each of the men selected for Laborer III had work experience in welding or operating the same types of equipment as that used by the City. It is entirely reasonable for the City, a political entity operating on a limited budget, to prefer hiring persons who had no need to be trained to operate, repair, or maintain the equipment used by the City, particularly equipment of such value as the subject equipment.

This court finds that the City has proffered an entirely legitimate, nondiscriminatory reason for its decision to hire candidates other than Pruitt for the Laborer III positions, i.e.,

14

Pruitt was not the most qualified. Having done so, the burden shifts back to Pruitt to demonstrate that the City's reason is but a pretext for intentional discrimination. Pruitt must show "both that the reason was false, and that discrimination was the real reason." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 512 n.4, 113 S.Ct. 2742, 2750 n.4 (1993).

It is important to note that the court's inquiry at this stage must focus on the perception of the decision-maker. *See Lewis-Webb v. Qualico Steel Co., Inc.*, 929 F.Supp. 385, 391 (M.D. Ala. 1996). In other words, Pruitt's beliefs as to her qualifications are irrelevant. Rather, she must show that the City's asserted reasons are, in fact, a cover up of the City's real motive, to discriminate against her because of her sex. *Id.* An employer may legally refuse to hire an employee for good reasons, bad reasons, or no reason at all, as long as its actions are not motivated by a discriminatory purpose. *See Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1187 (11th Cir. 1984). This court is not here to determine whether the City exercised prudent business judgment, *see Lewis-Webb*, 929 F.Supp. at 391, or to substitute its own judgment as to proper hiring practices. *See Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 578, 98 S.Ct. 2943, 2950 (1978). In particular, the

Eleventh Circuit has noted that "where an employer selects the person it believes is most qualified, an argument for pretext ordinarily will fail." *Clark v. Huntsville City Bd. of Educ.*, 717 F.2d 525, 527 (11th Cir. 1983).

As evidence of pretext, Pruitt argues (1) that her application demonstrated qualifications superior to the others, and that Jenkins would have seen that this was true had he non-discriminatorily reviewed her application; and (2) that defendant's argument that she was not the most qualified demonstrates pretext, because she is only required to show that she is equally qualified.

This court confesses to being somewhat confused as to how these arguments are intended to demonstrate pretext. These arguments appear simply to restate Pruitt's conclusory and unsupported assertions that she was qualified for the position. This court cannot superimpose its own conclusions in this regard, and force the City not to exercise its own judgment. Pruitt acknowledges that she did not bring Laborer III level skills to the job she was hired for, but instead claims that she acquired them while working for the City. Pruitt's supervisor of two years, Mr. Jenkins, testified that he does not agree. Pruitt has not offered evidence of genuine, substantive, hands-on training in welding, or heavy equipment operation, maintenance and repair. This court

16

cannot conclude, based on this record, that the City's finding that Pruitt was unqualified is, in truth, a pretext for sex discrimination.

This court is willing to believe that Pruitt is genuinely interested in a career in heavy equipment maintenance and operation. With training, she would probably be a good candidate for such employment. This court also fully understands the difficulties a qualified female applicant faces when trying to break into this traditionally male-dominated area. Furthermore, this court has no doubt that some supervisors and decision-makers in this field might bring an anti-female bias to hiring in this area of employment. Such bias could reach a level of actionable discrimination under Title VII under certain circumstances. Notwithstanding these views, this court does not find that actionable discrimination occurred here. This court finds that the City was well within reasonable boundaries when it concluded that other candidates were better qualified for the advertised Laborer III positions, and this court finds no evidentiary basis for finding the City's articulated reason pretextual. Pruitt has raised no genuine issue of material fact to rebut the City's articulated reason in a way to suggest that that reason was enunciated to mask a sinister motive proscribed by Title VII.

17

Accordingly, summary judgment for defendant is due to be granted, and will be granted by separate order.

DONE this 3rd day of December, 1999.

/s/ William M. Acker
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE